# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

BAILEY'S WELDING & ) 
MACHINE, LLC, )
 )
      Plaintiff, )
 )
-vs- ) Case No. CIV-19-1126-F
 )
DEL CORPORATION, foreign )
corporation, d/b/a DEL TANK AND )
FILTRATION SYSTEMS, and )
CHEMJECT INTERNATIONAL, )
INC., a foreign corporation, )
 )
      Defendants. )

## **ORDER**

Before the court is Defendant DEL Corporation's Motion to Dismiss, filed on February 21, 2020. Doc. no. 12. Also, before the court is Defendant Chemject International, Inc.'s Motion to Dismiss, filed on March 11, 2020. Doc. no. 16. Plaintiff, Bailey's Welding & Machine, LLC, has responded to both motions and the defendants have replied. Upon due consideration of the parties' submissions, the court makes its determination.

I.

*Dismissal Under Rule 12(b)(2), Fed. R. Civ. P.*

Defendant, DEL Corporation, d/b/a DEL Tank & Filtration Systems ("DEL"), seeks dismissal of plaintiff's amended complaint, arguing that the court lacks personal jurisdiction over the company.[1]

Because defendant contests personal jurisdiction, plaintiff bears the burden of proving it exists. Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004). However, plaintiff's burden is light. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). When, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written material, plaintiff is only required to make a prima facie showing of personal jurisdiction. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

In adjudicating defendant's motion, the court accepts as true the well-pled facts of the amended complaint, to the extent uncontroverted by defendant's affidavits. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008); Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992). However, any factual disputes in the parties' affidavits are resolved in plaintiff's favor. *Id*.

To show personal jurisdiction over defendant in this diversity action, plaintiff must demonstrate that personal jurisdiction is proper under the laws of the forum state – Oklahoma – and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. Dental Dynamics, LLC v. Jolly

---

[1] DEL is a Louisiana corporation in the business of manufacturing, selling and renting customized tank systems and equipment for dredging, dewatering and solids separation projects. Its principal place of business in Scott, Louisiana. The company has no assets or employees in Oklahoma.

Dental Group, LLC, 946 F.3d 1223, 1228 (10th Cir. 2020). "Oklahoma's long arm statute authorizes courts to 'exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.'" *Id*. (quoting 12 O.S. 2011 § 2004(F)). Given that defendant does not raise an objection based upon the Oklahoma constitution, the analysis collapses into a single due process inquiry. *Id*.

Plaintiff does not assert that the court may exercise general jurisdiction over defendant based upon affiliations with the forum state that are "so continuous and systematic as to render [it] essentially at home in the forum [s]tate." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quotation omitted). Therefore, the court must decide whether the court may exercise specific personal jurisdiction.

The Due Process Clause authorizes specific personal jurisdiction if two elements are met. "First, defendant must have 'purposefully established minimum contacts within the forum state.'" Dental Dynamics, LLC, 946 F.3d at 1228 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Second, the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id*., (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

A.

*Jurisdictional Facts*

The record, with all factual disputes resolved in plaintiff's favor, reveals that in the fall of 2018, Jason Bard ("Bard), a representative with defendant, Chemject International, Inc. ("Chemject"), contacted Michael Kulbeth, a DEL sales representative, to inquire whether DEL could manufacture 10 frac tanks, with a delivery date of January 15, 2019. Kulbeth advised that DEL could only deliver Chemject 4 of the 10 tanks within that timeframe. Bard mentioned to Kulbeth that

3

plaintiff was a fabrication shop that could possibly undertake fabrication of the remaining 6 tanks. Bard and Kulbeth discussed the idea of DEL subcontracting plaintiff's work and DEL invoicing Chemject for both its and plaintiff's work.

Plaintiff is an Oklahoma limited liability company located in Chickasha, Oklahoma. Its sole member is Rusty Bailey (Bailey), an Oklahoma citizen. On October 10, 2018, Kulbeth emailed Bailey asking for a quote to sandblast and paint the frac tanks and a quote to fabricate 1 to 5 of the tanks. He attached DEL's engineering drawings and specifications for the tanks. The tanks had a capacity of 21,000 gallons. Following the email, Kulbeth called Bailey, and from that conversation, Bailey understood the work would be done on a subcontract basis for DEL for an ultimate customer in Oklahoma. Kulbeth referenced plaintiff's location as a benefit because of its proximity to the tanks' destination. The next day, Kulbeth emailed Bailey, providing an updated DEL drawing and specifications, due to a change in the specifications.

On October 17, 2018, Kulbeth emailed Bailey inquiring about the quotes. Bailey responded he would have them the next morning. Bailey emailed the quotes as represented. Kulbeth advised Bard that the quotes were too high. Both men decided to make some engineering changes to see if plaintiff could re-quote the job at a lower price. On October 23, 2018, Kulbeth emailed Bailey with the tweaked specifications and asked him to quote plaintiff's best rate "if we guaranteed 6 tanks." Doc. no. 12, ex. 2-5. Bailey emailed new quotes on October 24, 2018. Shortly thereafter, Kulbeth emailed Bard asking him if he could call Bailey and "work that price magic." *Id*., ex. 2-7. Bard called Bailey, stating that he was calling on behalf of the project with DEL and wanted to know if DEL gave plaintiff all 10 of the frac tanks, what price break could be given, or could plaintiff do 6 of the tanks at a price of $54,250.00 for each tank rather than $56,565.00 for each tank as quoted by

4

plaintiff.  The conversation between the men confirmed that the ultimate customer of the tanks was in El Reno, Oklahoma.

On October 30, 2018, Bailey emailed to Kulbeth a new reduced quote, a price to fabricate a tank of $44,250.00 and a price to sandblast and paint the tank at $10,000 for a total of $54,250.00.  The revised quote had a required deposit of half the total price, with the remaining due on completion.  Thereafter, Kulbeth called Bailey and told him "We will use you if you will do a '30% down.'"  Doc. no. 17-1, ¶ 21.

The terms were agreed upon by DEL and Bailey.  DEL directed Bailey to send the revised quote to Chemject.  DEL told Bailey that if he sent the quote to the email address provided, they would get the money wire transfer started to deposit in his account in Oklahoma.  Bailey understood from the conversation that DEL and Chemject were partners on the project.  Thereafter, the money was transferred to Bailey's account in Chickasha.

On November 29, 2018, Kulbeth emailed Bailey stating that Bard had wanted him to check in with him to see what drawings he had and what he needed. Bailey reported by email what drawings he had and that he had finished three of the skids for the tanks and the remainder of the skids would be done in two days.  He also reported that he would be starting on the tanks and that there had been a price increase on the metal.  The next day, Kulbeth advised that the piping layout may have changed and that he would send what he had and to make sure it all matched. He directed Bailey to advise Bard of the information.  On December 6, 2018, Bailey emailed Kulbeth asking for a revised copy of the piping arrangement.  Kulbeth provided the requested drawings which were DEL drawings.

On January 17, 2019, Kulbeth emailed two individuals at Lafayette Paint & Supply, Inc. asking for quote to be given directly to Bard for the same orange color

paint DEL had used to paint the four tanks it built for Chemject. He advised them on January 24, 2019 that Bard needed 5 gallons of the paint as well as primer. Bard forwarded the email to Bailey on February 25, 2019.

Plaintiff fabricated, sandblasted and painted the six tanks in compliance with DEL's specifications. The tanks were not taken or paid for by either DEL or Chemject.

B.

*Minimum Contacts*

The minimum contacts test for specific personal jurisdiction has two requirements: (1) defendant must have "purposefully directed its activities at residents of the forum state," and (2) plaintiff's injuries must arise out of defendant's forum-related activities. Dental Dynamics, LLC, 946 F.3d at 1229; *see also*, Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.") The purposeful direction requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Dental Dynamics, LLC, 946 F.3d at 1229. The mere foreseeability of causing injury in another state is insufficient on its own to establish purposeful direction requirement. *Id*.

A contract with an out-of-state party cannot, standing alone, establish minimum contacts with the forum state. Burger King, 471 U.S. at 478. However, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id*. at 473. To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, the court must examine "prior

6

negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479. A contract relied upon to establish minimum contacts must have a "substantial connection" with the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957).

1.

*Purposeful Direction/Purposeful Availment*

The jurisdictional facts show that DEL solicited plaintiff's assistance in fabricating, sandblasting and painting the six frac tanks. This solicitation is evidence of purposeful availment. Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270, 1277 (10th Cir. 2005). DEL approached plaintiff because it had been recommended that the company could do the work and plaintiff's location was close to El Reno where the tanks were to be delivered. Plaintiff's proximity to the tanks' ultimate destination was an important consideration because of transportation costs. Kulbeth and Bard, at Kulbeth's request and on DEL's behalf, negotiated the price of plaintiff's work. DEL and plaintiff came to an agreement of the price, after Kulbeth advised plaintiff that they would choose plaintiff if it accepted a 30% deposit rather than a 50% deposit. At Kulbeth's direction, plaintiff's quote was sent to Chemject and the deposit was then wired to plaintiff. The fabrication, sandblasting and painting of those tanks occurred in Oklahoma and those services, which occurred over several months, were performed pursuant to the specifications that DEL emailed plaintiff. Although the agreement between the parties was a single contract, fulfilling that contract required a continuing relationship based upon plaintiff having to provide the services, based upon DEL's specifications, that were necessary to fulfill the agreement. DEL checked on plaintiff's progress and continued to provide drawings necessary for plaintiff to perform its work. It also contacted its paint supplier to assist in obtaining the paint plaintiff needed for the tanks it was

fabricating. The court concludes that by procuring plaintiff's services, DEL purposefully availed itself of the privilege of conducting activities within the forum state. Pro Axess Inc., 428 F.3d at 1277; *see also*, Employers Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1160 (10th Cir. 2010).

Additionally, DEL and plaintiff exchanged emails and phone calls regarding the agreement and the work to be performed by plaintiff. Although phone calls and emails are not necessarily sufficient in themselves to establish minimum contacts, they provide some evidence that DEL pursued a continuing business relationship with an Oklahoma company. Pro Axess, Inc., 428 F.3d at 1277-1278. DEL specifically provided the drawings and specifications that were needed for plaintiff to perform its work through the emails. Those emails reflect that DEL purposefully directed its activities to a resident of the forum state. Further, the agreement between the parties had a substantial connection to Oklahoma because the work, over $325,000.00 in value, was to be performed, and paid for, in Chickasha, and the finished tanks were to be delivered to El Reno. The contacts at issue were not random, fortuitous or attenuated contacts. The court therefore concludes that DEL purposefully directed its activities to a resident of Oklahoma.

2.

*Arising Out of*

The court finds that a nexus exists between DEL's contacts with Oklahoma and plaintiff's injuries, such that plaintiff's injuries "arise out of or relate to [DEL's] activities." Pro Axess, Inc., 428 F.3d at 1278-1279. Plaintiff's breach of contract claim arose from DEL's solicitation of plaintiff, the agreement between the parties for plaintiff to fabricate, sandblast and paint six frac tanks, the performance of the agreement by plaintiff pursuant to DEL's specifications. Those same activities also

constitute DEL's contacts with Oklahoma. Plaintiff's claim thus arises out of DEL's contacts with Oklahoma.

B.

*Traditional Notions of Fair Play and Substantial Justice*

Because plaintiff has satisfied the minimum contacts test for specific personal jurisdiction, the court must consider whether the exercise of specific personal jurisdiction offends "traditional notions of fair play and substantial justice." Pro Axess, Inc., 428 F.3d at 1279. The exercise of jurisdiction must be reasonable in light of the circumstances surrounding the case. Benton, 375 F.3d at 1078. Where a defendant has purposefully directed its activities at the forum state's resident, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477.

Five factors are relevant to this inquiry: 1) the burden on the out-of-state defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental social policies. Dental Dynamics, LLC, 946 F.3d at 1229.

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1096 (10th Cir. 1998). In its motion, DEL contends that litigating in Oklahoma would burden the company. DEL points out that it has no property, offices or employees in Oklahoma and argues that its evidence and witnesses are all located in Louisiana. The court accepts that DEL does not have any property, offices or employees in Oklahoma, but the company does not explain how these facts demonstrate that

litigating in Oklahoma would impose a burden on it. And as to the lack of evidence and witnesses in Oklahoma, DEL has not indicated in its papers how its defense would be hampered or hindered in any significant way. "As in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road.'" Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1081 (10th Cir. 2008). In the court's view, defendant has not shown that the burden of litigating in Oklahoma would be significant. Therefore, the court finds the first factor weighs in favor of plaintiff.

As to the second factor, the forum state's interest in adjudicating the suit, the court concludes that the factor also weighs in plaintiff's favor. "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." Pro Axess, Inc., 428 F.3d at 1280 (quotation omitted). "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Id*. Defendant contends that Oklahoma's interest is minimal given that no agreement was executed between the parties. However, as previously stated, all factual disputes are resolved in favor of plaintiff with respect to defendant's motion. Thus, the court finds that an agreement between the parties was reached, and Oklahoma has an interest in providing a forum for plaintiff's suit against defendant based upon the alleged breach of that agreement. Further, it appears that Oklahoma law governs plaintiff's breach of contract claim.

The third factor hinges on whether a plaintiff may receive convenient and effective relief in another forum. "This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing [it] to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Pro Axess, Inc.,

428 F.3d at 1281. There is no indication that plaintiff's recovery would be greatly diminished or that the pursuit of its lawsuit would be foreclosed by litigating in Louisiana. However, there is no showing that a Louisiana forum would be a convenient forum for plaintiff to litigate its suit. The court concludes that this factor appears to be neutral.

The fourth factor, the judicial system's interests, weighs in favor of plaintiff. Important to this inquiry are "the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Pro Axess, Inc., 428 F.3d at 1281. Although defendant's witnesses are not located in Oklahoma, the alleged wrong occurred in Oklahoma, the law of Oklahoma appears to govern this case, and if DEL is dismissed, plaintiff will be litigating against defendants in two different states, resulting in piecemeal litigation. Thus, litigating plaintiff's claim in Oklahoma would be more efficient than in Louisiana.

The final factor, shared interest in furthering social policies, appears to be neutral as neither party advances any fundamental social policies weighing in their favor.

Upon review of the five factors, the court concludes that the factors do not weigh in favor of defendant. Defendant has failed to present a compelling case that would render the exercise of personal jurisdiction over it unreasonable as to plaintiff's breach of contract claim. Defendant has not persuaded the court that the exercise of specific personal jurisdiction would offend the traditional notions of fair play and substantial justice. The court therefore concludes that dismissal of plaintiff's amended complaint under Rule 12(b)(2) is not appropriate.

## II.
### *Dismissal Under Rule 12(b)(5), Fed. R. Civ. P.*

Chemject requests dismissal of plaintiff's amended complaint, claiming insufficiency of service of process. Chemject asserts that plaintiff mailed by certified mail the amended complaint and summons in an envelope, addressed to its president and registered agent, David Gaither, to an office address where Chemject conducted business in 2018. The envelope was then forwarded to the company's current office address and Mr. Gaither found it on an office desk. An employee not authorized either by appointment of Chemject or by law to accept service had signed for the envelope. Delivery was not restricted to Mr. Gaither. Chemject contends its counsel spoke to plaintiff's counsel about the invalid service of process and offered to sign a waiver, if provided in the form required by Rule 4, Fed. R. Civ. P., but Chemject did not receive any response to the offer. Because the 90-day deadline for service of process has expired, Chemject maintains that dismissal is appropriate.

Plaintiff responds that it substantially complied with the statute for service of process and substantial compliance is all that is required under Oklahoma and Tenth Circuit authority. It contends that while Mr. Gaither did not sign the receipt for the summons and amended complaint, he did receive the documents and then forwarded them to counsel. Plaintiff maintains that the lack of "restricted" service did not invalidate its service. Plaintiff points out that Chemject had actual notice of the suit. In addition, plaintiff argues that Chemject, through its counsel, agreed to waive service of process, but it failed to submit the waiver. Plaintiff requests the court find that Chemject is estopped to assert its motion or order Chemject to sign and file a waiver of service *instanter*. Further, plaintiff requests that if service is invalidated, the court grant plaintiff an extension of time to effect service and permit it to serve Chemject by either email or regular mail on it or its counsel.

In reply, Chemject represents that dismissal under Rule 12(b)(5) is likely moot. Chemject states that after plaintiff filed its response, Chemject's counsel received a Notice of a Lawsuit and Request to Waive Service of Summons pursuant to Rule 4, which had been sent by plaintiff's counsel on March 18, 2020. Chemject states that its counsel signed the Waiver and returned it on April 3, 2020. According to Chemject, it never agreed not to contest the attempted service upon Mr. Gaither. It asserts that it clearly stated to plaintiff that the service was invalid and that any waiver was conditioned upon receiving a notice and request from plaintiff in accordance with Rule 4. Chemject maintains that it was reasonable for it to conclude that when plaintiff failed to respond to its counsel's emails, a request for dismissal under Rule 12(b)(5) was warranted.

A Rule 12(b)(5) motion challenges the plaintiff's mode of serving process on the defendant. 5B Arthur R. Miller, et al, Federal Practice & Procedure, § 1353. In opposing such a motion, plaintiff bears the burden of showing that it "complied with all statutory and due process requirements." Craig v. City of Hobart, Case No. CIV-09-0053-C, 2010 WL 680857, at *1 (W.D. Okla. Feb. 24, 2010). A motion under Rule 12(b)(5) permits a court to either quash the process or dismiss an action. 5B Arthur R. Miller et al., Federal Practice & Procedure, § 1354. As stated, dismissal is requested by Chemject since the 90-day deadline for service under Rule 4(m), Fed. R. Civ. P., has expired.

The Federal Rules of Civil Procedure permit service of process to be obtained on a corporation pursuant to Rule 4(h)(1)(A) "in the manner prescribed by Rule (4)(e)(1) for serving an individual[,]" or pursuant to Rule 4(h)(1)(B) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Rule 4(h)(1)(A) and Rule 4(h)(1)(B), Fed. R. Civ. P. Plaintiff relies

13

upon Rule 4(h)(1)(A). Rule (4)(e)(1), Fed. R. Civ. P., permits service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"

Section 2004 of Title 12 of the Oklahoma Statutes allows service of process by "certified mail, return receipt requested and delivery restricted to the addressee." 12 O.S. 2011 § 2004(C)(2)(b). It is undisputed that the delivery was not restricted to the addressee, Mr. Gaither. Although plaintiff argues that it substantially complied with the requirements for service by mail under § 2004(C)(2)(b), the court finds otherwise. Plaintiff's attempted service by mail was accepted by an unauthorized person. Thus, it did not substantially comply with the statute and the service was invalid. Hukill v. Oklahoma Native American Domestic Violence Coalition, 542 F.3d 794, 802 (10th Cir. 2008). The cases relied upon by plaintiff for finding substantial compliance, even though delivery was not restricted to addressee, Nikwei v. Ross School of Aviation, Inc., 822 F.2d 939, 943 (10th Cir. 1987), and Coulsen v. Owens, 125 P.3d 1233, 1237 (2005), are distinguishable from the case at bar because neither Mr. Gaither nor a person authorized under § 2004(C)(2)(c) to accept service accepted or refused the service by mail. Hukill, 542 F.2d at 801-802.

The court finds that the service of process upon Mr. Gaither is invalid. However, the court declines to dismiss plaintiff's amended complaint for failure to effect proper service of process upon Chemject. It is undisputed that the time for service under Rule 4(m), Fed. R. Civ. P., had run as of the time of the filing of Chemject's motion. Although plaintiff has not shown "good cause" for failing to timely effect proper service of process so as to require a mandatory extension of time for service, *see*, Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995), the court concludes, under the circumstances of this case, that a permissive extension of time for service is warranted. *Id*. Therefore, the court grants plaintiff an additional

14

45 days from the date of the 90-day deadline, March 2, 2020, to effect service of process upon Chemject. As it appears that plaintiff, within that 45-day period, has complied with the Rule 4 requirements with respect to obtaining a waiver of service from Chemject and the company has signed a waiver, the court finds dismissal of plaintiff's amended complaint under Rule 12(b)(5) is not warranted.

III.

*Dismissal under Rule 12(b)(6), Fed. R. Civ. P.*

DEL and Chemject additionally seek dismissal of plaintiff's amended complaint for failure to state a claim upon which relief may be granted.

In deciding whether dismissal under Rule 12(b)(6) is appropriate, the court accepts "as true all well-pleaded allegations in the complaint and view[s] them in the light most favorable to the [non-moving party.]" S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014) (quotations omitted). To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quotations omitted).

The "nature and specificity of the allegations required to state a plausible claim will vary based on context." S.E.C., 744 F.3d at 641 (quotations omitted). Making that determination requires the court to "draw on its judicial experience and common sense." Id. (quotations omitted).

With these principles in mind, the court finds that dismissal under Rule 12(b)(6) is not appropriate. The three elements of a breach of contract claim are (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834,

843 (Okla. 2001). The court concludes that the amended complaint sufficiently alleges all three elements. The amended complaint alleges that plaintiff and defendants entered into an agreement for plaintiff to manufacture six "10' x 36' finished fabricated frac tanks mounted on skids" for the price of "$325,500.00" to be paid by defendants. Doc. no. 4, ¶ 5. It alleges that plaintiff completed the tanks pursuant to the agreement and that defendants breached the agreement by failing to take and pay for them. Further, it alleges that plaintiff has been damaged by defendant's breach.

In their papers, defendants raise the issue of statute of frauds. However, the statute of frauds is an affirmative defense. The court may only dismiss the amended complaint under Rule 12(b)(6) based upon the affirmative defense if it appears plainly on the face of the pleading. Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965). Here, the affirmative defense does not appear plainly on the face of the amended complaint. This matter may be raised at the summary judgment stage.

Defendants make other challenges to the merits of plaintiff's claims against them, but such challenges would require the court to examine matters outside the allegations of the amended complaint. This would require the court to convert defendants' motions into motions for summary judgment under Rule 56, Fed. R. Civ. P. *See*, Rule 12(d), Fed. R. Civ. P. The court declines to proceed in this manner.

Based upon the allegations in the amended complaint, the court concludes that plaintiff has alleged a plausible breach of contract claim against each defendant. Consequently, the court finds that defendants' motions for dismissal under Rule 12(b)(6) should be denied.

IV.

Based upon the foregoing, Defendant DEL Corporation's Motion to Dismiss is **DENIED**.  Chemject International, Inc.'s Motion to Dismiss (doc. no. 16) is also **DENIED**.

IT IS SO ORDERED this 9th day of April, 2020.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

19-1126p005.docx